David M. WARZECHA, Joseph J. Warzecha, Jr., and David A. Schleicher, Plaintiffs,

v.

The NUTMEG COMPANIES, INC., Diana Bugbee, Individually, as President and Owner of The Nutmeg Companies, Inc., and as Trustee of Nutmeg Mechanical, Inc. Employees' Retirement Plan, and Lisa Gawendo, Individually, as Treasurer, and as Trustee of Nutmeg Mechanical, Inc. Employees' Retirement Plan, Defendants.

No. 3:97–CV–219 (GLG)

United States District Court, D. Connecticut.

April 23, 1999.

Joseph V. Meaney, Jr., Jane M. Colonno, Cranmore, Fitzgerald & Meaney, Hartford, CT, for plaintiffs.

Mark E. Block, O'Brien, Shafner, Stuart, Kelly & Morris, P.C., Norwich, CT, for defendants.

## OPINION

GOETTEL, District Judge.

Pursuant to Federal Rule of Civil Procedure 56, the parties have cross-moved for summary judgment in this employment-related dispute. Plaintiffs, all former employees of the Nutmeg Companies, Inc. ("Nutmeg"), formerly known as Nutmeg Mechanical, Inc., challenge the manner in which defendants paid their wages, reimbursed them for work-related expenses, and made contributions to their pension plans. For the following reasons, plaintiffs' motion (doc. # 47) is DENIED, and defendants' motion (doc. # 80) is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

Defendant Nutmeg is a Connecticut corporation which does business as a general and mechanical contractor for private, federal, and state projects. At all times relevant to this action, Nutmeg was operated by four principals: Diana Bugbee, President; Lisa Gawendo, Treasurer; Jason Bugbee, and Evert Gawendo. In 1989, Nutmeg formed an employee pension benefit plan, called the Nutmeg Mechanical, Inc. Profit Sharing Plan (the "1989 Plan"), within the meaning of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461. Nutmeg subsequently amended this plan, with an effective date of January 1, 1992 ("1992 Plan"), yet the parties dispute whether the negotiations for the amendment took place in 1992 or 1993. For purposes of this decision when generally referring to Nutmeg's employee pension benefit plan, we use the term "Nutmeg Plan." Since 1989, Diana Bugbee and Lisa Gawendo have been the trustees of the Nutmeg Plan. As part of her responsibilities, Diana Bugbee has calculated the amount of contributions to the Nutmeg Plan and the amount of benefits due to the plaintiffs on Davis–Bacon projects.

Each plaintiff was eligible to participate, and did enroll, in the Nutmeg Plan. Joseph J. Warzecha, Jr. worked at Nutmeg from December 1988 to December 1994, David J. Warzecha was employed at Nutmeg from August 1989 to January 1995, and David A. Schleicher worked there from July 1989 to September 1995. Each plain-

tiff was hired as an apprentice plumber and became fully licensed during his course of employment with Nutmeg. Also during their employment, each plaintiff served as foremen on various public sector projects.

The issues in this case relate to the wages and fringe benefits received by plaintiffs, and the contributions made by Nutmeg to plaintiffs' pension plans. Nutmeg paid its employees according to various schedules depending on whether the employee was working on a federal, state, or private sector project. Under the Davis–Bacon Act, 46 Stat. 1494 (1931) (codified as amended at 40 U.S.C. §§ 276a to 276a–5), employees on federal public works projects are required to be paid wages equal to the wages paid in the project's locale on similar, private construction jobs. 40 U.S.C. § 276a(a). These wages are known as "prevailing wages." The State of Connecticut has enacted a prevailing wage law similar to the Davis–Bacon Act. Conn.Gen.Stat. § 31–53.

The Davis–Bacon Act defines "prevailing wage" as:

(1) the basic hourly rate of pay; and

(2) the amount of—

(A) the rate of contribution irrevocably made by a contractor or subcontractor to a trustee or to a third person pursuant to a fund, plan, or program; and

(B) the rate of costs to the contractor or subcontractor which may be reasonably anticipated in providing benefits to laborers and mechanics pursuant to an enforceable [sic] commitment to carry out a financially responsible plan or program which was communicated in writing to the laborers and mechanics affected,

for medical or hospital care, pensions on retirement or death, compensation for injuries or illness resulting from occupational activity, or insurance to provide any of the foregoing, for unemployment benefits, life insurance, disability and sickness insurance, or accident insurance, for vacation and holiday pay, for defraying costs of apprenticeship or other similar programs, or for other bona fide fringe benefits, but only where the contractor or subcontractor is not required by other Federal, State, or local law to provide any of such benefits.

40 U.S.C. § 276a(b). Accordingly, the "prevailing wage" includes both a cash wage component and an amount for fringe benefits prevailing in the locality. An employer may satisfy its obligation to pay prevailing wages by making cash payments, contributing to an employee fringe benefit plan, incurring costs for fringe benefits, or a combination thereof. *Id.;*[1] 29 C.F.R. § 5.31 (1997). In no event, however, can "the aggregate of any such payments, contributions, and costs [be] less than the rate of pay described in paragraph (1) plus the amount referred to in paragraph (2)." 40 U.S.C. § 276a(b).

When plaintiffs served as foremen on public sector projects, they were paid wages above the prevailing wage rate ("foremen's wages"). These excess wages were negotiated between Nutmeg and the employee on a project-by-project basis, although defendants assert that occasionally Jason Bugbee or Evert Gawendo would set these amounts unilaterally. Defs.' Mem. in Supp. of Mot. for Summ. J'ment, at 4. Additionally, before plaintiffs became fully licensed plumbers, they worked as apprentices. Nutmeg participated in a state-sponsored apprenticeship program which provides training for individuals seeking

---

1. Specifically, the Davis–Bacon Act provides that:

the obligation of a contractor or subcontractor to make payment in accordance with the prevailing wage determinations of the Secretary of Labor ... may be discharged by the making of payments in cash,

by the making of contributions of a type referred to in paragraph (2)(A), or by the assumption of an enforcible [sic] commitment to bear the costs of a plan or program of a type referred to in paragraph (2)(B), or any combination thereof.

40 U.S.C. § 276a(b).

their plumbers' license. Apprentices in this program are paid a percentage of the prevailing wage rate depending on their level of experience. Conn.Gen.Stat. §§ 31–51a to 31–51e; Conn. Agencies Regs. § 31–51d–5 (1997).

For private sector projects, plaintiffs did not have written employment contracts. Rather, plaintiffs reached individual oral agreements with Nutmeg as to their hourly rates of pay on a project-by-project basis. Defendants refer to the rate of pay for these wages as the "shop rate."

In addition to their wages, plaintiffs were given a gasoline credit card for employment-related use. Plaintiffs' understanding was that Nutmeg would pay for any employment-related gasoline expenses. Yet, plaintiffs assert that these reimbursements were effectively paid for from amounts set aside as contributions to their pension plans. Indeed, Diana Bugbee has sworn that Nutmeg took a deduction from the fringe benefit component of plaintiffs' Davis–Bacon wages for a portion of the gasoline charged to the credit cards. Bugbee Aff. of 8/4/98 ¶ 4.

Plaintiffs do not dispute the amounts they received in their weekly paychecks. Rather, plaintiffs challenge defendants' manner of paying their foremen's wages, reimbursing them for the charges on the gasoline credit cards, and contributing to their pension plans. Specifically, plaintiffs allege that defendants took deductions from the fringe benefit portion of their Davis–Bacon wages in order to pay for the foremen's wages and gasoline reimbursements. By taking these amounts as deductions, plaintiffs argue that defendants not only never actually paid plaintiffs their promised additional compensation, but also that defendants effectively reduced the amount of contributions made to plaintiffs' pension plans.

Plaintiffs claim that Nutmeg never informed them of how it was making contributions to plaintiffs' pension plans until a meeting in October 1994.[2] Defendants, however, assert that plaintiffs became aware of the alleged problems with the pension plan contributions sometime in 1993 when the plaintiffs were comparing their pension plan balances with the balances of other lower-paid employees. Plaintiffs then filed their seven-count complaint on February 4, 1997.[3]

## DISCUSSION

The parties have cross-moved for summary judgment. As defendants' motion raises procedural grounds for summary judgment, we consider their motion first.

## I. SUMMARY JUDGMENT STANDARD

A court may grant summary judgment only if it determines that there is no genuine issue of material fact based on a review of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. Fed.R.Civ.P. 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). When ruling on a summary judgment motion, a court must construe

---

2. In their Memorandum in Opposition to Defendants' Summary Judgment Motion, plaintiffs refer to the meeting as occurring in November 1994. Yet, in defendants' Local Rule 9(c)1 Statement of Undisputed Facts, defendants assert that this meeting was held at Nutmeg's offices in October 1994. Plaintiffs did not controvert this statement in their Local Rule 9(c)2 Statement, and thus it is deemed admitted. Local Rule 9(c)1; *see Kusnitz v. Yale Univ. Sch. of Med.*, No. 3:96–cv–2434, 1998 WL 422903, at *1 (D.Conn. July 16, 1998) (admitting *all* facts in the moving party's Local Rule 9(c)1 Statement because the opposing party did not submit a Local Rule 9(c)2 Statement).

3. On August 13, 1998, this Court granted plaintiffs' motion to amend the first amended complaint. In the second amended complaint, plaintiffs brought for the first time a common-law claim for misrepresentation. Because we granted the motion to amend after all parties had moved for summary judgment, we do not address Count Seven in this decision.

the facts in a light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). If there is no genuine issue of material fact, the moving party is entitled to summary judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## II. STATUTE OF LIMITATIONS ON ERISA CLAIMS

Defendants contend that portions of plaintiffs' claims alleging ERISA violations are time-barred because they were brought more than six years from the accrual date. Defendants rely on 29 U.S.C. § 1113, entitled "Limitation of Actions," which sets forth a six-year statute of limitations for ERISA claims based on breach of fiduciary duty. In contrast, plaintiffs argue that Counts One and Two allege violations of 29 U.S.C. § 1132, and thus, fall outside of the limitations period of section 1113. Accordingly, plaintiffs urge this Court to apply the six-year statute of limitations for a state-law breach of contract claim. *See Brunoli v. Fred Brunoli & Sons, Inc. Pension Plan*, 993 F.Supp. 66, 71 (D.Conn.1997) (noting that ERISA is silent as to the limitations period for claims that do not allege a breach of fiduciary duty, and thus applying the statute of limitations for the state law action most closely analogous to a claim under section 1132); *see also Miles v. New York State Teamsters Conference Pension and Retirement Fund Employee Pension Benefit Plan*, 698 F.2d 593, 598 (2d Cir.), *cert. denied*, 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983). Although we agree with plaintiffs as a technical matter, for practical purposes the parties both agree that Counts One through Three are governed by a six-year statute of limitations.

To determine the accrual dates for plaintiffs' claims, we consider when there was a "repudiation by the fiduciary which is *clear* and made known to the beneficiaries." *Miles*, 698 F.2d at 598 (citation and internal quotation marks omitted) (emphasis in original). With respect to Count One, defendants assert that several of plaintiffs' claims are time-barred. Plaintiffs' first claim in Count One is that defendants breached ERISA's disclosure and reporting standards by failing to furnish plaintiffs with summary plan descriptions ("SPDs") and information pursuant to 29 U.S.C. §§ 1021(a), 1022(a)(1), and 1024(b) (1997). According to section 1024, the plan administrator must give each participant a copy of the SPD "(A) within 90 days after he becomes a participant . . ., or (B) if later, within 120 days after the plan becomes subject to this part." 29 U.S.C. § 1024(b)(1) (1997). Plaintiffs started their employment with Nutmeg as follows: Joseph J. Warzecha—December 1988, David Warzecha—August 1989, and David Schleicher—July 1989. Although the parties do not specify the exact date, Nutmeg established the Nutmeg Plan sometime in 1989. It was subsequently amended, with an effective date of January 1, 1992. At the most, defendants had 120 days after the 1989 Plan became subject to ERISA to distribute the SPDs. To the extent defendants failed to distribute the SPDs for the 1989 Plan in either late 1989 or early 1990, we find that plaintiffs claim is time-barred. Plaintiffs filed this action on February 4, 1997, which is more than six years from when the SPDs should have been distributed. Thus, we grant summary judgment to defendants on plaintiffs' claim in paragraph 30(a) of Count One arising under the 1989 Plan.

Nevertheless, defendants concede that the 1989 Plan was amended and made effective for the 1992 plan year. Under section 1024(b)(1), the plan administrator is required to distribute a summary description of any modification or change within 210 days after the end of the year in

which Nutmeg adopted the change. The parties dispute when the Nutmeg Plan was amended. while the 1992 Plan is dated December 19, 1992, there is sufficient evidence to create an issue of fact as to whether the Nutmeg Plan was amended in 1993. *See infra* at 26–27. However, for purposes of deciding whether plaintiffs' claim regarding the 1992 Plan is timely, the actual date of the amendment is immaterial. Assuming Nutmeg amended the 1989 Plan on December 19, 1992, the plan administrator should have distributed a summary of the amendment by the Summer of 1993. Moreover, in 1994 Nutmeg was required to distribute an updated SPD which integrated all plan amendments made within the five-year period after the plan became subject to Part 1 of Subchapter I of ERISA. 29 U.S.C. § 1024(b)(1). Because plaintiffs brought this action within six years, plaintiffs claim regarding the 1992 Plan is timely. Thus, we deny defendants' summary judgment motion on plaintiffs' claim in paragraph 30(a) of Count One on the 1992 Plan.

■ Plaintiffs' next claim in Count One is that defendants failed to publish annual reports pursuant to 29 U.S.C. § 1023 (1997). According to the regulations, the plan administrator must give each participant materials relating to the annual report within nine months after the close of the plan's fiscal year. 29 C.F.R. § 2520.104b–10(c) (1997). Defendant Bugbee has sworn that Nutmeg is on a calendar year for tax purposes, and thus, has a closing date of December 31 for each year. Accordingly, the annual reports should have been distributed by the end of September for each subsequent year, and failure to do so constitutes a separate breach of ERISA's reporting and disclosure requirements. Applying the six-year statute of limitations, we find that plaintiffs' claims under paragraph 30(b) of Count One are time-barred only as to the 1989 annual report which should have been furnished to plaintiffs by September 1990. Thus, defendants' summary judgment motion is granted in part and denied in part on this issue.

■ Finally, in Count One plaintiffs allege that defendants did not furnish plaintiffs with statements of benefit rights. Section 1025(a) provides that the plan administrator of an employee pension benefit plan "shall furnish to any plan participant . . . *who so requests in writing*, a statement indicating, on the basis of the latest available information—(1) the total benefits accrued, and (2) the nonforfeitable pension benefits, if any, which have accrued, or the earliest date on which benefits will become nonforfeitable." 29 U.S.C. § 1025(a) (1997) (emphasis added). Defendants contend that they are entitled to summary judgment on all claims arising under this section because there is no evidence that plaintiffs ever made any written requests for their statements of benefit rights. Indeed, all plaintiffs concede that they never made written requests for statements of benefit rights. However, plaintiffs Joseph and David Warzecha made post-termination requests individually through their prior counsel on September 15, 1995. Plaintiff Joseph Warzecha's Interrog. Resp. dated 10/29/97, at 8; Plaintiff David Warzecha's Interrog. Resp. dated 10/29/97, at 8. Consequently, we grant summary judgment to defendants on plaintiffs' claims under paragraph 30(c) of Count One, except for plaintiffs Joseph and David Warzecha's claims with respect to their September 15, 1995 requests.

In Count Two, plaintiffs allege that defendants failed to make required contributions to their pension plans, and in Count Three, plaintiffs assert that defendants breached their fiduciary duties, in part, by failing to notify plaintiffs that they were not making the required contributions to the pension funds. To determine if these claims are barred by the statute of limitations, we must ascertain the date when the plan administrator's clear repudiation was made known to the participants. Usually the repudiation occurs upon the denial of a

plaintiff's application for benefits. *See Patterson–Priori v. Unum Life Ins. Co. of Am.*, 846 F.Supp. 1102, 1106 (E.D.N.Y. 1994). Here, however, plaintiffs never applied for benefits, and thus the effect of defendants' repudiation would not be clear until plaintiffs begin receiving payments from their pension plans in the future. Accordingly, we consider when plaintiffs had knowledge of the breach. For purposes of defendants' summary judgment motion all parties agree that plaintiffs were not aware of a possible problem with how defendants calculated the contributions to plaintiffs' pension plans until October 1994. *See* Defs.' Mem. in Supp. of Mot. for Summ. J'ment, at 5 n. 4 (using October 1994 as the date of discovery). Thus, we find that none of plaintiffs' claims under Counts Two or Three are time-barred because the claims were brought within six years of the accrual date.

## III. STATUTE OF LIMITATIONS ON STATE–LAW CLAIMS

Plaintiffs assert three state-law causes of action. In Count Four, plaintiffs allege that defendants violated Conn.Gen.Stat. section 31–71a and sections 31–71d to 31–71f, inclusive, by failing to contribute to plaintiffs' pension plans and by failing to pay agreed compensation to plaintiffs. They seek damages pursuant to sections 31–71g, 31–72, and 31–89a. Count Five avers violation of the Connecticut Prevailing Wage Law, Conn.Gen.Stat. § 31–53. Plaintiffs base this claim on defendants' failure to contribute to their pension plans and failure to pay agreed compensation. Count Six raises a common-law breach of contract claim based on the manner in which defendants paid foremen's wages to plaintiffs and contributed to plaintiffs' pension plans. Defendants argue that Counts Four and Five are barred by the two-year statute of limitations in Conn.Gen.Stat. § 52–596 relating to actions for payment of remuneration for employment. They further contend that Count Six is barred by the six-year statute of limitations in Conn. Gen.Stat. § 52–576(a) governing breach of contract claims.

■ For purposes of section 52–596, a cause of action for payment of remuneration for employment accrues when an employer refuses to compensate an employee according to the terms of an express or implied employment contract. *See Burns v. Koellmer*, 11 Conn.App. 375, 388, 527 A.2d 1210, 1218 (1987) (stating that the cause of action arose when "the defendant breached the agreement by refusing to fully compensate the plaintiff for her services"); *Williams v. Cushman and Wakefield of Conn., Inc.*, Civ. No. 95–0148747S, 1998 WL 246493, at *2 (Conn.Super. May 5, 1998) (finding that the cause of action accrued when the employer denied the employee additional wages in 1991, not when her employment ended nearly four years later, and thus concluding that the plaintiff's claims under Conn.Gen.Stat. § 31–71a were time-barred). In this case, the statute of limitations would bar any claims under sections 31–53, 31–72, or 31–89a which accrued before February 4, 1995.

Plaintiffs argue, however, that the statute of limitations should be tolled because defendants fraudulently concealed how they were paying plaintiffs their foremen's wages and contributing to plaintiffs' pension plans. According to section 52–595, entitled "Fraudulent Concealment of Cause of Action," if defendants fraudulently concealed from plaintiffs the existence of their cause of action, the cause of action is deemed to accrue when the plaintiffs discovered the existence of the cause of action. The parties agree that the plaintiffs first learned of how defendants paid their weekly wages and calculated the contributions to the plaintiffs' pension plans at the October 1994 meeting. Consequently, section 52–595 would operate to fix the accrual date as October 1994 for plaintiffs' claims in Counts Four and Five, assuming plaintiffs could establish fraudulent concealment.

■ Although we find that there is an issue of fact as to whether defendants fraudulently concealed how they paid foremen's wages and contributed to plaintiffs' pension funds, *see infra* at 17, we conclude that all of plaintiffs' claims in Counts Four and Five are time-barred. According to section 52–596, all of plaintiffs' claims under sections 31–53, 31–72, and 31–89a should have been brought within two years of the October 1994 meeting, or by October 1996. Even though plaintiffs' employment continued after that meeting, plaintiffs became aware of their causes of action in October 1994, thereby causing the statute of limitations to begin to run. Because plaintiffs did not file this action until February 4, 1997, their claims are not timely. We therefore grant summary judgment to defendants on Counts Four and Five because we find these claims are time-barred.

■ With respect to plaintiffs' claims in Count Six, however, we find that there is an issue of material fact as to the accrual date. For purposes of section 52–576, a cause of action for breach of contract accrues when the breach occurs or the injury is inflicted. *Beckenstein v. Potter and Carrier, Inc.*, 191 Conn. 150, 156, 464 A.2d 18, 22 (1983) (citation omitted). We reject plaintiffs' argument that the statute of limitations should be tolled until each plaintiff stopped working for Nutmeg because defendants owed them a continuing course of duty. A Connecticut Superior Court recently refused to apply the continuing course of duty exception to employment contracts. *Williams*, 1998 WL 246493, at *2. The court noted that it "is unable to find, and the plaintiff does not identify, any case which applies this doctrine to contract or employment wage actions." *Id.* The court reasoned that it could:

> envision an employee who remains employed with a company for thirty years after a similar salary dispute. It would be simply unfair to an employer if the court were to allow that plaintiff, thirty years after her last complaint to the

employer about her salary, to bring an action for thirty years of back wages. "Whether seen as a sanction imposed on plaintiffs who sleep on their rights or as a benefit conferred upon defendants to reduce the risk and uncertainty of liability, statutes of limitation ... serve the ... public policy of avoiding the litigation of stale claims."

*Id.* (quoting *Baxter v. Sturm, Ruger & Co.*, 230 Conn. 335, 344, 644 A.2d 1297, 1301 (1994)) (alteration in original). While plaintiffs cite *Gaylord Hospital v. Massaro*, 5 Conn.App. 465, 499 A.2d 1162 (1985), as explaining "why the continuing course of duty applies to breach of employment contract claims," Pls.' Mem. in Opp'n to Defs.' Mot. for Summ. J'ment, at 8, the reference in *Gaylord* to employment contracts was *dicta*. Moreover, the facts of that case involved breach of contract for the defendant's failure to pay hospital and medical expenses, and not breach of an employment contract.

■ Yet, plaintiffs have also alleged that defendants fraudulently concealed the cause of action in Count Six. As previously discussed, pursuant to section 52–595 the accrual date would be October 1994 which was the date plaintiffs discovered the alleged breach of contract. Thus, all of plaintiffs' claims in Count Six would be timely because they were brought within six years, which is the statute of limitations under section 52–576(a) for breach of contract claims, of the October 1994 meeting. In their amended complaint, plaintiffs assert that "Nutmeg failed to disclose that it was taking credits against the Plaintiffs' fringe benefit set-aside listed above and this fact was concealed by the failure of the Defendant, Diana Bugbee, to issue annual reports to the Plaintiffs which would have disclosed that Pension contributions made on behalf of the Plaintiffs were reduced by virtue of said credits." Am.Compl. ¶ 22. Defendants deny this. *See* Defs.' Mem. in Supp. of Mot. for Summ. J'ment, at 17 (stating that there is no allegation of fraudulent concealment).

Based on the parties' disagreement, we find that there is a genuine issue of material fact as to defendants' alleged fraudulent concealment. We therefore deny summary judgment to defendants on Count Six based on the statute of limitations.

## IV. PREEMPTION

Having granted summary judgment to defendants on Counts Four and Five, we address defendants' preemption defense only as it relates to plaintiffs' breach of an implied contract in Count Six. ERISA's preemption section provides that ERISA will "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a). Defendants argue that plaintiffs' breach of contract claim is preempted by ERISA because plaintiffs' relief properly lies under ERISA. We disagree. Defendants' reliance on *Devine v. Combustion Engineering, Inc.*, 760 F.Supp. 989 (D.Conn.1991) is misplaced. In *Devine*, the court dismissed the plaintiffs' three state-law causes of action based on ERISA preemption because the plaintiffs had pled the existence of an employee benefit plan. The plaintiffs were participants in a voluntary separation incentive program under which they received free lifetime medical and dental benefits in exchange for taking early retirement. The defendants subsequently required them to pay monthly premiums. The court noted that the plaintiffs had pled the state-law claims in the alternative, and were not seeking relief under both ERISA and state law. 760 F.Supp. at 991.

■ While we agree with defendants that courts routinely find that ERISA preempts common-law breach of contract claims, *see, e.g., Krass v. Connecticare, Inc.*, Civ. No. 3:96–2565, 1998 WL 26409, at *4 (D.Conn. Jan.14, 1998) (canvassing cases), we nevertheless find that in this case preemption is not warranted. To determine if a state law claim is preempted by ERISA, we first consider whether plaintiffs' breach of contract claim depends upon the existence of an ERISA plan to show liability, such that the merits of plaintiffs' common-law claim "are contingent upon the rights conferred by the ERISA plan." *Id.* We also consider whether plaintiffs' breach of contract claim has a "clear connection with a plan by mandating employee benefit structures and administration or by providing alternative enforcement mechanisms." *Case v. Hospital of St. Raphael*, 38 F.Supp.2d 207 (D.Conn.1999) (citing *Plumbing Indus. Bd., Plumbing Local Union No. 1 v. E.W. Howell Co.*, 126 F.3d 61 (2d Cir.1997)).

■ In Count Six, plaintiffs assert that during the apprentice phase of their employment, they were promised wages in excess of the percentage of the prevailing wage customarily paid to apprentices. They further claim that they entered into an agreement with Nutmeg whereby Nutmeg promised to pay plaintiffs a sum certain over the then-prevailing wage in consideration for plaintiffs' performance as foremen and/or supervisors on certain construction projects. To pay for these excess wages, plaintiffs allege that defendants effectively shifted funds from the plaintiffs' pension plans to their weekly pay checks because defendants deducted these wages from the fringe benefit portion of their Davis–Bacon wages. Accordingly, plaintiffs argue that defendants are in breach of contract for failing to honor the terms of the Nutmeg Plan, misusing funds which should have been set aside as contributions to plaintiffs' pension plans, failing to honor their agreement with plaintiffs for wages and fringe benefits, and failing to contribute to plaintiffs' pension plans. Moreover, plaintiffs claim that they were given gasoline credit cards for employment-related use with the understanding that Nutmeg would reimburse plaintiffs for the charges made on those credit cards. Yet, plaintiffs assert that the charges were paid for with funds from the plaintiffs' own pension plans because defendants took deductions for these charges

against the fringe benefit portion of their Davis–Bacon wages.

After reviewing plaintiffs' claims, we find that they do not hinge on the existence of an ERISA plan. Here, liability does not stem from, for example, defendants' failure to pay benefits out of the Nutmeg Plan. Rather, plaintiffs contend that defendants did not pay them wages or reimburse them for gasoline credit card charges according to the terms of an oral or implied employment contract. Thus, plaintiffs could bring their breach of contract claims with or without the existence of the Nutmeg Plan. Moreover, although plaintiffs' breach of contract claim refers to the defendants' misuse of Nutmeg Plan funds (by effectively shifting funds from the plaintiffs' pension plans to cover excess weekly wages and reimbursements for the gasoline credit card charges), plaintiffs' breach of contract claim does not attempt to restructure employee benefits, affect the Nutmeg Plan's administration, or create an alternative enforcement mechanism. Consequently, we find that the common-law breach of contract claim in Count Six is not preempted by ERISA.

## V. REPORTING AND DISCLOSURE REQUIREMENTS UNDER 29 U.S.C. § 1023

In addition to raising procedural grounds for summary judgment, defendants also move for summary judgment on the merits of several counts in the amended complaint. First, defendants claim that they are entitled to partial summary judgment on Count One because they are exempt from the reporting and disclosure requirements of ERISA set forth in 29 U.S.C. § 1023, including the requirement to engage an independent qualified public accountant in order to incorporate his or her opinion into the annual report, to hire an enrolled actuary for the purpose of preparing an actuarial statement, and to furnish certain information in the annual report.

Section 1023(a)(3)(A) requires the administrator of an employee benefit plan to engage an independent qualified public accountant to review the plan's financial statements, books, and records for the purpose of offering an opinion as to whether the financial statements and schedules, which will be included in the annual report, are presented fairly. The accountant must also offer his or her opinion as to whether the information contained in the separate schedules attached to the financial statement and the summary material of the latest annual report is presented fairly. These opinions must be made a part of the annual report.

Yet, section 1023(a)(3)(A) provides that "the Secretary may waive the requirements of this paragraph" if the employee benefit plan is "required only to file a simplified annual report" pursuant to section 1024(a)(2). The regulations promulgated under section 1024(a)(2) state that employee benefit plans with less than 100 participants shall file a simplified annual report, known as Form 5500–R "Registration Statement of Employee Benefit Plan (with fewer than 100 participants)". 29 C.F.R. § 2520.104–41(b), (c). The regulations further provide that if a plan is eligible for filing a Form 5500–R, the plan administrator is not required to comply with the requirement of engaging an independent qualified public accountant. 29 C.F.R. § 2520.104–46(b), (c). For purposes of this motion, defendants agree that they are required to file an annual report. Defendants have submitted an affidavit of Diana Bugbee, Nutmeg's President and Trustee of the Nutmeg Plan, swearing that the Nutmeg Plan has always had less than 100 participants—and is therefore permitted to file only a simplified annual report—and has filed a Form 5500–R annually. Defendants have also supplied copies of the Forms 5500–R for the years 1989 to 1994. Based on defendants' evidence and the regulations, it appears Nutmeg was exempt from the requirements of section 1023(a)(3)(A) regarding the independent

qualified public accountant. However, the regulations provide that:

> [i]n the case of an employee benefit plan subject to § 2520.104–41 (concerning simplified annual reporting for plans with fewer than 100 participants), the administrator, in lieu of furnishing a summary annual report for the year in which a Form 5500–R is filed, shall ... furnish each participant of such plan ... either—(1) A copy of the Form 5500–R filed on behalf of the plan, and the notice described in paragraph (b)(3); or (2)(i) A written notice stating that in lieu of a summary annual report a copy of the Form 5500–R filed on behalf of the plan will be furnished free of charge upon receipt of a written request ...

29 C.F.R. § 2520.104b–10(b). Thus, even though defendants may have been exempt from the independent qualified public accountant requirements, the Nutmeg Plan administrator still had to comply with the provisions of 29 C.F.R. § 2520.104b–10(b). There is no evidence before us indicating whether defendants ever gave Form 5500–R to plaintiffs pursuant to subsection (b)(1) or, upon their written request, gave them a written notice pursuant to subsection (b)(2). Failure to have done so may result in a finding that defendants breached their fiduciary duty. We leave this issue for the trier of fact to decide, and therefore deny summary judgment to defendants on plaintiffs' claim in Count One under section 1023(a)(3)(A).

Defendants next argue that they are exempt from the requirements of section 1023(a)(4)(A) which provides that a plan administrator must engage an enrolled actuary for the purpose of preparing an actuarial statement in accordance with section 1023(d). Section 1023(a)(4)(A) states that "in a case where by reason of section 1024(a)(2) of this title, a plan is required only to file a simplified report, the Secretary may waive the requirement of this paragraph." Nutmeg is not exempt from filing an annual report, but based on the number of the plan participants, Nutmeg must file only a simplified report. *See* 29 U.S.C. § 1024(a)(2)(A) ("With respect to annual reports required to be filed with the Secretary under this part, he may by regulation prescribe simplified annual reports for any pension plan which covers less than 100 participants."). Defendants contend that the Secretary's waiver has been promulgated at 29 C.F.R. §§ 2520.104–42 and 2520.103–2(c). While it is true that under section 2520.104–42, the Secretary has waived certain of the requirements in section 1023(d)(6), it is not a complete waiver. To the extent defendants cite section 2520.103–2(c) as another waiver, we are unable to find such a subsection. Specifically, defendants state that under 29 C.F.R. § 2520.103–2(c) the simplified annual report which the Nutmeg Plan is authorized to file because it has less than 100 participants excludes statements or schedules required by Schedule B of Form 5500, entitled 'Actuarial Information.' Defs.' Mem. in Supp. of Mot. for Summ. J'ment, at 22. To the extent defendants are relying on section 2520.103–1(c), "Contents of the Annual Report for Plans with Fewer Than 100 Participants," we find their contentions misleading. Section 2520.103–1(c) provides that:

> the annual report of an employee benefit plan which covers fewer than 100 participants at the beginning of the plan year shall be a completed Form 5500–C "Return/Report of Employee Benefit Plan (with fewer than 100 participants)," or a completed Form 5500–R "Registration Statement of Employee Benefit Plan (with fewer than 100 participants)," *and any statements or schedules which are required to be attached to these forms, including* Schedule A "Insurance Information," and *Schedule B "Actuarial Information."*

29 C.F.R. § 2520.103–1(c) (emphasis added). Thus, we do not find that the Secretary has waived all of the requirements relating to the engagement of an enrolled actuary. Consequently, we deny defendants' motion for summary judgment on

plaintiffs' claims under section 1023(a)(4)(A).

Finally, defendants assert that Nutmeg was exempt from the requirements of section 1023(c) which sets forth the information that the plan administrator must furnish in the annual report. We reject defendants' argument to the extent defendants attempt to state that they are exempt from filing an annual report, and instead must file only a simplified annual report. For employee benefit pension plans, the Secretary of Labor is authorized to prescribe "simplified annual reporting for employee pension benefit plans with fewer than 100 participants." 29 C.F.R. § 2520.104–41(a)(1). Thus, defendants must still file an annual report, but they need to do so only in a simplified form. We do not have enough information before us to decide whether the substance of the filed reports comports with the requirements of section 1023(c) and the regulations promulgated thereunder. Consequently, we deny summary judgment to defendants on the claims in Count One regarding 29 U.S.C. § 1023(c).

## VI. Failure to Contribute to Plaintiffs' Pension Plans

Both plaintiffs and defendants have moved for summary judgment on the merits of Count Two, which avers that plaintiffs did not receive the full amount of the contributions to their pension plans.

■ In opposition to plaintiffs' summary judgment motion, defendants contend that plaintiffs' claim should be stricken because the action was not brought under the Davis–Bacon Act. Defendants assert that plaintiffs could have proceeded under 40 U.S.C. § 276a–2, "Payment of Wages By Comptroller General from Withheld Payments; Listing Contractors Violating Contracts." We find, however, that plaintiffs are not precluded from proceeding under ERISA to challenge defendants' practice of making deductions from the fringe benefit portion of the Davis–Bacon prevailing wages. Moreover, plaintiffs' complaint is sufficiently well-pled to put defendants on notice that plaintiffs are seeking, among other things, recovery of delinquent contributions under 29 U.S.C. § 1132. Defendants have not cited any authority, nor are we aware of any, for the proposition that Davis–Bacon is plaintiffs' exclusive remedy.

■ In their own summary judgment motion, defendants argue that under the 1992 Plan, plaintiffs were not entitled to have the balance, remaining after defendants took bona fide deductions from the fringe benefit portion of plaintiffs' Davis–Bacon prevailing wages, contributed to their pension plans.[4] Plaintiffs, however, have alleged that defendants improperly back-dated the 1992 Plan and thus, the 1989 Plan should be considered the controlling plan. The 1992 Plan is dated December 19, 1992 with an effective date of January 1, 1992. Plaintiffs have submitted evidence suggesting that defendants did not actually sign the 1992 Plan until sometime in 1993, and thus improperly backdated the agreement. For example, plaintiffs provided the deposition testimony of Daniel Carter, a third-party administrator of the Nutmeg Plan. At his deposition he was shown a letter dated February 1, 1993 to the Corbel Company, the company that drafted the 1992 Plan, asking for certain provisions to be included in the amended plan. When asked to reconcile the date of letter with the date of the 1992 Plan, Carter testified, "[t]he only explanation I can give you is that normally if we were trying to get a plan in for a particular calendar year, we might just send this out for signature before the document itself is—is actually created. So we might have sent a cover sheet and the back sheet out for signature." Carter Dep. at 32. Carter

---

4. The parties do not dispute that plaintiffs have a valid claim for the period preceding the 1992 Plan.

164

further testified that as of February 1993, the 1992 Plan was in "the design stage" and that the plan was not "completed." *Id.* When asked if the plan was back-dated, Carter replied, "I can't tell you that...I don't know for certain. I really do not." *Id.* at 35. Additionally, plaintiffs submitted several letters dated in 1993 discussing the changes to be made to the 1989 Plan, and stating that the amendments will be effective as of January 1, 1992. Based on these letters and Carter's deposition testimony, we find that plaintiffs have provided sufficient evidence to raise a genuine issue of material fact as to whether the 1992 Plan was improperly back-dated. We therefore deny defendants' summary judgment motion on Count Two.

The issue of whether the 1992 Plan is valid also affects plaintiffs' motion for summary judgment on Count Two. Even though plaintiffs assert that Diana Bugbee has admitted that Nutmeg took deductions, for foremen's wages and reimbursements for gasoline credit card charges, against the fringe benefit portion of plaintiffs' Davis–Bacon prevailing wages, there are numerous issues of fact outstanding. A trier of fact must determine which Nutmeg Plan governs in order to decide how to calculate plaintiffs' damages, if any. The motion papers submitted in connection with plaintiffs' motion for summary judgment also demonstrate that the parties are at odds over how to calculate damages.

Moreover, the parties dispute whether the deductions taken for foremen's wages and gasoline credit card charges against plaintiffs' Davis–Bacon fringe benefits were bona fide. *See International Bhd. of Elec. Workers, Local 357, AFL—CIO v. Brock,* 68 F.3d 1194, 1200–01 (9th Cir. 1995) (concluding that a requirement that union employees pay a 2% gross wage assessment to support a jobs targeting program constituted a prohibited deduction under the Davis–Bacon Act). The Davis–Bacon Act specifies many categories of fringe benefits that Congress "considered to be common in the construction industry as a whole." 29 C.F.R. § 5.29(a). The Davis–Bacon Act also has a provision for "other bona fide fringe benefits" which is an "open end" provision. 29 C.F.R. § 5.29(c). Thus, to determine if the benefits at issue in this case are bona fide, a trier of fact will have to consider whether the benefits are common in the construction industry and if they are established under a "usual fund, plan, or program." 29 C.F.R. § 5.29(d). Finally, a trier of fact will have to decide, if it also concludes that defendants made unauthorized deductions from the fringe benefit portion of the Davis–Bacon prevailing wages, whether plaintiffs' wages dropped below the prevailing wage rates for public sector projects. Consequently, we deny summary judgment to plaintiffs on Count Two.

## VII. RELIEF UNDER 29 U.S.C. § 1132

Defendants argue that plaintiffs are barred from relief under 29 U.S.C. § 1132. Defendants first argue that plaintiffs cannot maintain an action under section 1132(a)(2) because plaintiffs brought this action on their own behalf, and not on behalf of the Plan. Defendants next claim that plaintiffs cannot maintain an action under section 1132(a)(3) because plaintiffs are seeking only monetary damages. Similarly, defendants contend that plaintiffs are precluded from proceeding under section 1132(a)(1)(B) because plaintiffs seek only money damages, also known as extracontractual damages.

As defendants note, the amended complaint does not specify the provision of section 1132 under which they are proceeding. Yet, it does contain a demand for "(1) Monetary damages including interest; (2) Attorney's fees and costs in prosecuting this action; and (3) Such other legal and equitable relief as this Court deems just and proper." Am.Compl., at 14. To the extent that plaintiffs have asserted a claim for breach of fiduciary duty and seek individual damages only, without any remedies that would benefit the Nutmeg Plan, they cannot proceed under section 1132(a)(2).

*Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 142–44, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985).

■ Plaintiffs can, however, bring a breach of fiduciary claim under section 1132(a)(1)(B) or section 1132(a)(3). *Varity Corp. v. Howe,* 516 U.S. 489, 512, 515, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). We find that plaintiffs may rely on section 1132(a)(1)(B) for their breach of fiduciary duty claim to enforce their rights under the Plan because in this case the benefits would "run directly to the injured participants." *Id.* at 512, 116 S.Ct. 1065. Plaintiffs may also bring their breach of fiduciary claim under section 1132(a)(3), which would entitle them to individual, equitable relief.[5] *Id.* at 510, 515, 116 S.Ct. 1065. Accordingly, we deny defendants' summary judgment motion on the relief available to plaintiffs under section § 1132. At trial, plaintiffs will bear the burden of showing their entitlement to such relief.

## VIII. BREACH OF FIDUCIARY DUTY

■ Plaintiffs move for summary judgment on Count Three, claiming that defendants breached their fiduciary duties under ERISA because defendants had an affirmative duty to inform plaintiffs that their foremen's wages and gasoline credit card charges were being paid for out of their respective pension plans. Pls.' Mem. in Supp. of Mot. for Summ. J'ment, at 10. According to ERISA, a fiduciary must "discharge his duties with respect to a plan solely in the interest of the participants:"

> (A) for the exclusive purpose of: (i) providing benefits to participants...and (ii) defraying reasonable expenses of administrating the plan; (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity

and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims....

29 U.S.C. § 1104(a). Defendants admit that Diana Bugbee took deductions for foremen's wages and charges made on gasoline credit cards against the fringe benefit portion of plaintiffs' Davis–Bacon wages. Defs.' Local Rule 9(c)1 Stmt. ¶ 12. As previously discussed, defendants contend that these deductions were bona fide, and therefore, that they complied with all statutory and regulatory requirements. As plaintiffs recognize, due to defendants' admission, "the only issue [is] whether the Defendants' conduct constituted a breach of fiduciary duty...." Pls.' Reply Mem., at 7. Plaintiffs attempt to characterize this issue as a question of law. Under the prudent person standard, the issue is whether the plan trustees, "at the time they engaged in the challenged transactions," acted in an objectively reasonable manner. *Katsaros v. Cody,* 744 F.2d 270, 279 (2d Cir.), *cert. denied,* 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984). Thus, the "trustees are to be judged according to the standards of others acting in a like capacity and familiar with such matters." *Id.* (citation and internal quotations omitted). In this case we find that whether defendants acted according to the prudent person standard is a question of fact. *See Roth v. Sawyer–Cleator Lumber Co.,* 16 F.3d 915, 919 (8th Cir.1994) (finding that "what the trustees did and whether what they did was reasonable are factual questions that preclude granting...summary judgment").

Moreover, defendants raise issues of fact on the calculation of damages, including the appropriate fringe benefit rate, the total number of hours spent on each job,

---

5. Although plaintiffs assert that the Supreme Court's decision in Varity "unequivocally holds that in cases such as this, money damages to the Plan beneficiaries may constitutes [sic] 'appropriate relief,'" Pls.' Mem. in Opp'n to Defs.' Mot. for Summ. J'ment, at 11, we disagree. Indeed, plaintiffs quote from

the section of the *Varity* decision, which in turn quotes the plain statutory language, stating that section 1132(a)(3) entitles a plan participant only to receive "appropriate equitable relief." *Id.* As the Court in *Varity* stated, "subsection three authorizes only 'equitable' relief." 516 U.S. at 509, 116 S.Ct. 1065.

the amounts used for fringe benefit costs, and the mis-classification of certain projects as Davis–Bacon projects. These issues are sufficient to warrant denying plaintiffs' summary judgment motion on Count Three.

## IX. COMMON–LAW BREACH OF CONTRACT

As discussed above, plaintiffs' common-law breach of contract claim involves breach of an implied employment agreement for the payment of foremen's wages and reimbursement of charges made on gasoline credit cards supplied by Nutmeg. Plaintiffs challenge the manner in which Nutmeg made these payments. We deny summary judgment to plaintiffs on this Count because it is riddled with genuine issues of material fact. For example, there is evidence that the foremen's wages were negotiated on a project-by-project basis, such that there could be as many as twenty implied agreements. A trier of fact would need to determine the terms of each of these contracts with respect to each individual plaintiff, as there is insufficient evidence before this Court to make such a conclusion. *See Bead Chain Mfg. Co. v. Saxton Prods., Inc.*, 183 Conn. 266, 274–75, 439 A.2d 314, 319 (1981) (stating that "[a]bsent a statutory warranty or definitive contract language, the determination of what the parties intended to compass in their contractual commitments is a question of the intention of the parties, and an inference of fact"). Even if, as plaintiffs contend, defendants admitted the existence of the implied contracts, they did not describe the definitive contract terms. We therefore leave it to a jury to draw conclusions from the parties' intentions to determine the terms of the implied contracts for foreman's wages and reimbursement for gasoline credit card charges. Thus, we deny summary judgment to plaintiffs on Count Six.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for partial summary judgment (doc. # 47) is DENIED, and defendants' motion for partial summary judgment (doc. # 80) is GRANTED on Counts Four and Five, DENIED on Counts Two, Three, and Six, and GRANTED IN PART and DENIED IN PART on County One.

**SO ORDERED.**